# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-1007

_____

McCaffree Financial Corp., on behalf of a class of those similarly situated, on behalf of The McCaffree Financial Corp. Employee Retirement Program

*Plaintiff - Appellant*

v.

Principal Life Insurance Company

*Defendant - Appellee*

------------------------------

Thomas E. Perez
United States Secretary of Labor

*Amicus on Behalf of Appellant(s)*

American Council of Life Insurers

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 21, 2015
Filed: January 8, 2016

_____

Before RILEY, Chief Judge, BYE and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

McCaffree Financial Corp. ("McCaffree") sponsors for its employees a retirement plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. McCaffree brought a class action lawsuit on behalf of those participating employees against Principal Financial Group ("Principal"), the company with whom McCaffree had contracted to provide the plan's investment options. McCaffree alleged that Principal had charged McCaffree's employees excessive fees in breach of a fiduciary duty Principal owed to plan participants under ERISA. The district court[1] granted Principal's motion to dismiss for failure to state a claim. We affirm.

I.

McCaffree and Principal entered into a contract on September 1, 2009. Pursuant to this contract, Principal agreed to offer investment options and associated services to McCaffree employees participating in the McCaffree retirement plan. The contract, which we consider as an "exhibit[] attached to the complaint whose authenticity is unquestioned," *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012), provided plan participants with a number of investment options. First, participants could maintain retirement contributions in a "general investment account" offering guaranteed interest rates. Alternatively, participants could allocate those contributions among various "separate accounts," which Principal had created to serve as vehicles for retirement-plan customers to invest in

_____

[1] The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

-2-

Principal mutual funds. Principal assigned each separate account to a different Principal mutual fund, meaning that contributions to a separate account would be invested in shares of the associated mutual fund. Principal reserved the right to limit which separate accounts (and therefore which mutual funds) it would make available to plan participants. In addition, McCaffree also maintained the ability to limit, via written notice to Principal, the accounts in which its employees could invest. Pursuant to these provisions, the full list of sixty-three accounts included in the plan contract was narrowed down to twenty-nine separate accounts (and associated Principal mutual funds) eventually made available to plan participants.

The contract provided that, in return for Principal providing access to these separate accounts, participants would pay to Principal both management fees and operating expenses. Principal assessed the management fees as a percentage of the assets invested in a separate account, and this percentage varied for each account according to its associated mutual fund. In addition, Principal could unilaterally adjust the management fee for any account, subject to a cap (generally 3 percent) specified in the contract. The contract required Principal to provide participants at least thirty days' written notice of any such change. The operating expenses provision did not place a limit on the amount that Principal could charge for such expenses, but it restricted Principal to passing through only those expenses necessary to maintain the separate account, such as various taxes and fees Principal paid to third parties. Principal assessed both the management fee and operating expenses in addition to any fees charged by the mutual fund assigned to each separate account.

Five years after entering into this contract, McCaffree filed this class action lawsuit on behalf of all employees participating in the McCaffree plan. The complaint alleged that Principal charged participants who invested in the separate accounts "grossly excessive investment management and other fees" in violation of Principal's fiduciary duties of loyalty and prudence under sections 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §§ 1104(a)(1)(A), (B). McCaffree claimed that the separate

accounts served no purpose other than to invest in shares of various Principal mutual funds and therefore involved minimal additional expense for Principal. Because each Principal mutual fund charged its own layer of fees, McCaffree alleged, the additional separate account fees were unnecessary and excessive. McCaffree's suit sought to recover for plan participants these separate account fees as well as the diminution of investment returns that had occurred as a result of the fees.

Principal moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Principal argued that McCaffree had failed to state a claim under ERISA because McCaffree had agreed to the disputed charges explicitly in its contract with Principal and because Principal was not a fiduciary at the time the parties agreed upon the allegedly excessive fees. The district court granted this motion, holding that Principal was not acting as a fiduciary at the time the fees and expenses were negotiated, and that any subsequent fiduciary duty Principal owed lacked a sufficient nexus with McCaffree's excessive fee allegations. McCaffree now appeals.

II.

We review *de novo* a district court's dismissal for failure to state a claim, taking all facts alleged in the complaint as true. *Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010). Rule 12(b)(6) allows a defendant to move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678. In making this determination, we must draw all reasonable inferences in favor of plaintiffs. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

In order to state a claim that a service provider to an ERISA-governed plan breached a fiduciary duty by charging plan participants excessive fees, a plaintiff first must plead facts demonstrating that the provider owed a fiduciary duty to those participants. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, 253 (1993) (confirming that the "detailed duties and responsibilities" imposed by ERISA are "limited by their terms to fiduciaries"). According to ERISA, a party not specifically named as a fiduciary of a plan owes a fiduciary duty only "to the extent" that party (i) exercises any discretionary authority or control over management of the plan or its assets; (ii) offers "investment advice for a fee" to plan members; or (iii) has "discretionary authority" over plan "administration." 29 U.S.C. § 1002(21)(A). The phrase "to the extent" at the beginning of this provision demonstrates that fiduciary status under ERISA "is not an all-or-nothing concept." *Trs. of the Graphic Commc'ns Int'l Union Upper Mw. Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) (quoting *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 192 (4th Cir. 2002)). Therefore, courts assessing claims under ERISA must ask "whether [a] person was acting as a fiduciary . . . *when taking the action subject to complaint*." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis added). In a recent case involving excessive fee claims similar to those asserted here, the Third Circuit aptly described this provision as requiring a "nexus" between the alleged basis for fiduciary responsibility and the wrongdoing alleged in the complaint. *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*, 768 F.3d 284, 296 (3d Cir. 2014).

Because Principal is not a named fiduciary of the plan, McCaffree needed to plead facts demonstrating that Principal acted as a fiduciary "when taking the action subject to complaint." *See Pegram*, 530 U.S. at 211. McCaffree makes five arguments in support of its claim that Principal breached a fiduciary duty to charge reasonable fees. None of these arguments, however, demonstrates that McCaffree

-5-

stated a valid claim under ERISA. The first fails because Principal owed no duty to plan participants during its arms-length negotiations with McCaffree, and the remaining four fail because McCaffree did not plead a connection between any fiduciary duty Principal may have owed and the excessive fees Principal allegedly charged.

First, McCaffree argues that Principal's selection of the sixty-three separate accounts in the initial investment menu constituted both an exercise of discretionary authority over plan management under 29 U.S.C. § 1002(21)(A)(i) and plan administration under (A)(iii). As a result, McCaffree contends, Principal owed a duty to ensure that the fees associated with those accounts were reasonable. However, this argument overlooks the fact that the contract between McCaffree and Principal clearly identified each separate account's management fee and authorized Principal to pass through additional operating expenses to participants in these accounts. Several of our sister circuits have held that a service provider's adherence to its agreement with a plan administrator does not implicate any fiduciary duty where the parties negotiated and agreed to the terms of that agreement in an arm's-length bargaining process. *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009); *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011). We agree. Up until it signed the agreement with Principal, McCaffree remained free to reject its terms and contract with an alternative service provider offering more attractive pricing or superior investment products. Under such circumstances, Principal could not have maintained or exercised any "authority" over the plan and thus could not have owed a fiduciary duty under ERISA. Because Principal did not owe plan participants a fiduciary duty while negotiating the fee terms with McCaffree, Principal could not have breached any such duty merely by charging the fees described in the contract that resulted from that bargaining process.

Second, McCaffree contends that Principal acted as a fiduciary when it selected from the sixty-three accounts included in the contract the twenty-nine it ultimately

made available to plan participants. McCaffree contends that this winnowing process, which took place after the parties entered into the contract, gave rise to a fiduciary duty obligating Principal to ensure that the fees associated with those twenty-nine accounts were reasonable. While the parties dispute whether McCaffree adequately pled that Principal, rather than McCaffree, chose the final twenty-nine accounts, we need not decide this issue. Even if McCaffree did so allege, McCaffree failed to plead a connection between the act of winnowing down the available accounts and the excessive fee allegations. At no point does McCaffree assert that only some of the sixty-three accounts in the contract had excessive fees, or that Principal used its post-contractual account selection authority to ensure that plan participants had access only to the higher-fee accounts. Instead, McCaffree's complaint categorically challenges the management fees and operating expenses associated with all of the separate accounts included in the contract, claiming that Principal lacked a legitimate basis for charging these fees for *any* separate account. Because Principal's alleged selection of the twenty-nine accounts is not "the action subject to complaint," *Pegram*, 530 U.S. at 226, McCaffree cannot base its excessive fee claims on any fiduciary duty Principal may have owed while choosing those accounts.[2]

---

[2] In any event, two facts evident from the contract attached to the complaint foreclose McCaffree's argument that Principal's selection of the twenty-nine accounts resulted in plan participants paying higher fees. First, the contract empowered McCaffree to reject any fund Principal selected for the plan. Second, our review of the fees reflected in the contract for the twenty-nine selected accounts shows that the average management fee associated with those accounts was just one tenth of one percent higher than the average fee of all sixty-three accounts identified in the contract. McCaffree cannot plausibly claim that this small discrepancy demonstrates that Principal violated any fiduciary duty in selecting the twenty-nine accounts, particularly where participants freely allocated their contributions among the various accounts available.

Third, McCaffree argues that Principal's discretion to increase the separate account management fees and to adjust the amounts charged to participants as operating expenses supports its claim that Principal was a fiduciary. However, McCaffree again has failed to plead any connection between this discretion and the complaint's excessive fee allegations. McCaffree points to Principal's authority to raise the management fees (subject to a cap), but McCaffree does not allege that Principal exercised this authority or that any such exercise resulted in the allegedly excessive fees. The complaint only challenges the management fees as provided for by the contract. Similarly, McCaffree contends that Principal's discretion in passing through operating expenses to plan participants implicated a fiduciary duty to ensure those charges were reasonable. McCaffree's complaint, however, is devoid of any allegation that Principal abused this discretion by passing through fees in excess of the expenses that it actually incurred and that the contract authorized it to pass on to plan participants.[3] McCaffree attempts to compensate for this shortcoming by explaining that its complaint challenged the *total* fees associated with the separate accounts, without regard to whether Principal classified the charges as operating expenses or management fees. Any such classification is immaterial, McCaffree contends, because Principal lacked a justification to charge participants in the separate accounts *any* additional fees. That line of reasoning only further undermines

---

[3] McCaffree contends that section 1002(21)(A)(iii) creates a fiduciary duty even where a service provider does not exercise its administrative authority. This argument is in line with our holding in *Olson v. E.F. Hutton & Co., Inc.*, in which we explained that subsection (A)(iii) "describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." 957 F.2d 622, 625 (8th Cir. 1992). This principle, however, does not rescue McCaffree's challenge to the operating expense charges. The contract does not give Principal any "authority" to pass through unreasonable or fabricated expenses. It authorizes only those expenses which "must be paid" to operate the accounts. The possibility that Principal might breach this provision and pass through unauthorized expenses does not represent any "authority" of the kind that might establish a fiduciary duty under subsection (A)(iii).

McCaffree's claim, as it demonstrates once again that McCaffree seeks to evade through this lawsuit precisely those fees to which the parties contractually agreed.

Fourth, McCaffree alleges that Principal provided participants with "investment advice," giving rise to a fiduciary duty under subsection (A)(ii). However, McCaffree failed to allege facts establishing a nexus between the separate account fees and any investment advice Principal may have provided. Although Principal does act as the investment manager for the mutual funds available through the separate accounts, Principal's management of those funds is not "the action subject to complaint," *Pegram*, 530 U.S. at 226. To the contrary, McCaffree claims that every investment option included in the plan charged excessive fees. Because a service provider's fiduciary status under ERISA "is not an all-or-nothing concept," *Bjorkedal*, 516 F.3d at 732, McCaffree cannot support its allegations that the fees in the plan contract are excessive by pointing to an unrelated context in which Principal serves as an investment manager.

Finally, McCaffree argues that Principal inadequately disclosed the additional layer of management fees for the underlying Principal mutual funds in which separate account contributions were invested. McCaffree's complaint did not allege that the mutual fund fees were excessive, and in its reply brief McCaffree confirms that the mutual fund fees are relevant to its claims only to the extent that these fees demonstrate that the additional separate account fees were excessive. Because the mutual fund fees are not "subject to complaint," *Pegram*, 530 U.S. at 226, we decline to decide whether Principal's alleged failure to disclose those fees breached a fiduciary duty.

## III.

Principal's enforcement of the terms of its contract with McCaffree did not implicate any fiduciary duties, and McCaffree failed to establish a connection

between its excessive fee allegations and any post-contractual fiduciary duty Principal may have owed to plan participants. Accordingly, we affirm the district court's dismissal of McCaffree's claims.

_____