STEPHANIE M. ROSE, UNITED STATES DISTRICT JUDGE
Plaintiffs are employees who participate in 401(k) retirement plans (the "Retirement Plans") offered by their employers. The Retirement Plans contracted with Defendants to provide a series of collective investment trusts (the "Principal CITs") for the Plaintiffs to invest in for retirement purposes. Plaintiffs allege Defendants violated their fiduciary duties of loyalty and prudence to Plaintiffs by investing the assets of the Principal CITs in investment vehicles owned almost exclusively by Principal, which underperformed and contained higher fees than other investment vehicles offered by other unaffiliated companies, in order to enrich themselves.
Plaintiffs' Complaint contains only one count for beach of the duties of loyalty and prudence in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104(a)(1)(A)-(B), (D). Defendants responded to Plaintiffs' allegations by filing a joint Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). [ECF No. 23]. Defendants requested oral argument, however the Court finds this matter can be appropriately resolved without it. See LR 7(c). For the reasons set forth below, Defendants' Motion to Dismiss, [ECF No. 23], is GRANTED in part and DENIED in part.
I. BACKGROUND[1]
Defendant Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company ("Principal Trust") created the Principal CITs in 2008. [ECF Nos. 1 ¶ 73; 1-1 at 19 n. 1]. Principal Trust entered into an agreement with Defendant Principal Management Corporation ("PMC") to *631 serve as the investment advisor for "the Principal CITs, subject to the supervision and review of Principal Trust." [ECF No. 1 ¶ 38]. Principal Trust served as trustee and PMC served as the investment advisor of the Principal CITs until December 31, 2016. Id. ¶¶ 31, 37. Defendant Principal Global Investors Trust ("PGI Trust") is the Principal CITs' current trustee and is the successor trustee to Principal Trust. Id. ¶ 28. PGI Trust entered into an agreement with Defendant Principal Global Investors, LLC ("PGI") to serve as the current investment advisor for the Principal CITs, and PGI took over for PMC in January 2017. Id. ¶ 35.
The Declaration of Trust that created the Principal CITs states that "[a]ll the assets of the Funds shall at all times be considered as assets held by the Trustee as fiduciary," and the trustee may "appoint [an] adviser as a co-fiduciary." [ECF Nos. 1 ¶¶ 32, 38; 1-1 at 9-10]. Section 9.2 of the Declaration of Trust states that it is the responsibility of the trustee to "act in good faith and with the care and skills a prudent person would use in an enterprise of like character and with like aims," and "[t]his standard of care is intended to be co-extensive with and not in addition to the fiduciary duties and standard of care applicable to the Trustee under ERISA." [ECF No. 1-1 at 17]. Section 2.4 further provides that the Principal CITs "are created for the exclusive benefit of the participants and beneficiaries of the Participating Trusts. No part of the corpus or income of a Fund ... may be used for or diverted to any purposes other than for the exclusive benefit of the participants or their beneficiaries entitled to benefits ...." Id. at 4. Moreover, PMC's and PGI's agreements with Principal Trust and PGI Trust state "that by serving as the investment manager of the Principal CITs, [they] would be acting in a fiduciary capacity as to the management of the Principal CITs' assets." [ECF No. 1 ¶ 38]. Sales literature from 2014 for the Principal CITs states that "Principal Trust and PMC are fiduciaries subject to [ERISA], as amended." Id. PGI Trust also acknowledged in sales literature during its time as trustee that it was an ERISA fiduciary with respect to the assets held in the Principal CITs. Id. ¶ 30 n.9.
The Principal CITs were made exclusively available to qualified retirement plans, and Principal Trust began investment operations in July 2009. Id. ¶¶ 41, 73. From July 2009 to the end of 2016, "approximately 9,000 retirement plans had participants invested in one or more of the Principal CITs." Id. ¶ 90. Each employer-sponsored retirement plan that invested in the Principal CITs entered into a participation agreement with the trustee. Id. ¶ 41. Thus, the Principal CITs are governed by the "Declaration of Trust and the participation agreement signed by each participating retirement plan." Id. ¶¶ 2, 74.
The Principal CITs offered by Defendants are target date funds that use a fund-of-funds structure. Id. ¶¶ 4, 73, 77. A fund-of-funds structure means the Principal "CITs assets [were] invested in other pooled investment products," such as "mutual funds, collective investment trusts, and annuity separate accounts, among other options." Id. ¶ 5. A target date fund is "managed towards a particular target (retirement) date, or the approximate date when the investor expects to start withdrawing money from the fund." Id. ¶ 49. Thus, "[t]arget date funds are generally offered as a suite of funds with target dates staggered 5 to 10 years apart, allowing the participant to choose the target date that aligns with his or her estimated retirement date." Id. ¶ 4. "As of the end of 2017, the Principal CITs consisted of twelve trusts: eleven options with a target date ranging from 2010 to 2060 (2010, 2015, 2020, etc.), and an option called Principal *632 LifeTime Hybrid Income Fund designed for investors 'who have reached their investment time horizon.' " Id.
Defendants followed a three-step process in deciding how to invest the Principal CITs' assets. Id. at 86. First, Defendants decided what asset classes would make up the Principal CITs. Id. Defendants decided the Principal CITs would invest in large cap stocks, bonds, midcap stocks, small cap stocks, international stocks, high yield bonds, real estate, and inflation-linked bonds. Id. ¶¶ 88-89. Second, Defendants then decided what percentage of the Principal CITs' assets would be invested in each class. Id. ¶ 86. The percentage of assets invested in each class changes over time, "with an investment mix that becomes more conservative as the fund's target (retirement) date approaches." Id. ¶¶ 4, 86. Third, Defendants then decided what specific underlying investment vehicles to use for each class. Id. Plaintiffs' claims against Defendants relate entirely to the third step-the Defendants' "selection, monitoring, and retention of the underlying investments of the Principal CITs." Id. ¶¶ 86, 91. Plaintiffs allege "the trustee and investment adviser were jointly responsible for determining the asset allocation of the Principal CITs as well as selecting the specific funds used to achieve each Principal CITs' target asset allocation." Id. ¶ 7.
Under the Declaration of Trust, the investors of the Principal CITs are required to pay four types of fees: (1) service fees, (2) non-advisory trustee fees, (3) operating expenses, and (4) the "fees charged by the underlying investments in the [Principal CITs]." Id. ¶¶ 5, 81. This case concerns the fourth type of fee. Id. ¶ 6. Plaintiffs do not argue the fee structure contained in the Principal CITs itself was a breach of a fiduciary duty, but instead argue it provided an incentive for Defendants to make disloyal and imprudent investment decisions. Id. ¶ 91.
One of Plaintiffs' primary complaints is that Defendants selected and retained underlying investments for the Principal CITs that contained higher fees than other potential investments that would have achieved a better or identical result. Further, Plaintiffs allege Defendants selected and retained underlying investments for the Principal CITs that were products of Principal so that Principal could receive the fees from those investments despite Defendants' obligation to operate the Principal CITs in the sole interest of the investors.
For instance, Defendants determined that large cap stocks, bonds, midcap stocks, and small cap stocks should each solely be represented by a Principal index fund.[2] Id. ¶ 88. "Large cap stocks [were] represented by [a Principal] index fund tracking the S & P 500 Index; bonds [were] represented by [a Principal index fund tracking] the Bloomberg Barclays Aggregate Bond Index; midcap stocks [were] represented by [a Principal index fund tracking] the S & P Midcap 400 Index; and small cap stocks [were] represented by [a Principal index fund tracking] the S & P SmallCap 600 Index." Id. "[A]t all relevant times, the Principal CITs have all had between 60 and 70 percent of their total assets invested in these four index funds," and "all twelve of the Principal CITs have had assets invested in all four of these index funds." Id. ¶ 88.
*633 Plaintiffs allege the Principal index funds' fees "were 5 to 15 times higher than marketplace alternatives that tracked the exact same index." Id. ¶ 12. In addition, Plaintiffs allege the Principal index funds performed significantly worse at tracking their respective index compared to marketplace alternatives. Id. ¶¶ 12, 93. Plaintiffs allege "Defendants failed to investigate these marketplace alternatives, choosing instead to further their own self-interest by using proprietary index fund products from Principal ... despite the fact that they charged fees that were 5 to 15 times higher than the fees charged by more competitive options." Id. ¶ 94. Plaintiffs also allege that other fiduciaries who manage target date collective investment trusts use index funds managed by other unaffiliated companies despite offering passively-managed investment products themselves. Id. ¶ 95. Further, "not a single target-date fund in the marketplace (other than those affiliated with Principal) used index funds managed by Principal as underlying investment options." Id.
Plaintiffs also allege that Defendants selected and retained imprudent investments that were supposed to represent the remaining asset classes. Plaintiffs allege Defendants "us[ed] Principal-affiliated mutual funds as investments within the Principal CITs despite the availability of lower-cost, but otherwise identical, annuity separate accounts managed by Principal."Id. ¶ 115. For example, Plaintiffs allege that, "at all relevant times, the Principal CITs have used the mutual fund version of the Principal Diversified International Fund ... [b]ut Principal offers an identical version of this investment as an annuity separate account" that charges "less than half than what the mutual fund charged." Id. ¶ 117. Plaintiffs allege there was no qualitative difference between the two vehicles. Id. ¶ 116. Moreover, Plaintiffs allege that "[s]everal of the Principal CITs used the Principal International Emerging Markets mutual fund, which as of the end of 2016 charged expenses of 1.21% per year ... despite the availability of ... an identical annuity separate account that charged fees that were at least 0.50% lower than the mutual fund, and would have outperformed the mutual fund by a comparable or greater amount." Id. ¶ 120. Plaintiffs allege these decisions "resulted in Defendants and their affiliates earning higher fees." Id. In addition, Plaintiffs allege Defendants failed to invest in investment vehicles owned by other unaffiliated companies so they could subsidize Principals' mutual fund business. Id. ¶ 122.
Lastly, Plaintiffs allege Defendants acted disloyally and imprudently in failing to obtain the best share class for the Principal CITs when investing its assets. Once a fund-of-funds manager selects an appropriate investment vehicle to invest in, the manager must then decide which share class of the vehicle to utilize. Id. ¶ 69. Investments "often offer multiple classes of shares of the same investment that are targeted at different investors." Id. ¶ 70. "Generally, more expensive share classes are targeted at smaller investors with less bargaining power, while lower-cost share classes are targeted at institutional investors with more assets." Id. "[T]he lowest cost share class of many index mutual funds and CITs have an investment minimum of several hundred million dollars" with "[t]here [being] no difference between share classes other than the cost." Id. Principal also offered different share classes of its investment vehicles, "with the primary difference being the costs associated with each share class." Id. ¶ 15.
Plaintiffs allege the investment minimums were easily met in this case, and there were no other limitations preventing Defendants from obtaining the lowest-cost share class for many of its investments. Id. ¶ 16. Plaintiffs allege Defendants intentionally *634 selected more expensive share classes not because they conferred any benefit to the Principal CITs but because Defendants and their affiliates would receive higher fees. Id. ¶ 17. For example, Plaintiffs allege Defendants retained institutional shares of the Principal high yield mutual fund, despite the availability of lower-cost shares. Id. ¶ 123. Additionally, Plaintiffs allege Defendants retained shares of the large cap, mid cap, and small cap index funds when lower-cost shares were available. Id. Plaintiffs claim Defendants failed to use the least expensive vehicle or failed obtain the least expensive share class for eleven of the thirteen investments held by the Principal CITs. Id. ¶ 20. Additional facts will be discussed as they become relevant.
II. STANDARD OF REVIEW
Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, and thus survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Braden v. Wal-Mart Stores, Inc. , 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. Although the plausibility standard "is not akin to a 'probability requirement,' " it demands "more than a sheer possibility that a defendant has acted unlawfully. " Id. (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). "The facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level.' " Clemons v. Crawford , 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting Drobnak v. Andersen Corp. , 561 F.3d 778, 783 (8th Cir. 2009) ). All reasonable inferences must be drawn in the plaintiffs' favor. Crooks v. Lynch , 557 F.3d 846, 848 (8th Cir. 2009).
III. ANALYSIS
Plaintiffs' Complaint alleges only one count-that Defendants "breached the fiduciary duties of prudence and loyalty imposed upon them by 29 U.S.C. § 1104." Braden , 588 F.3d at 594. The elements for a breach of a fiduciary duty claim require a plaintiff to prove: (1) "that the defendant acted as a fiduciary," (2) the defendant "breached its fiduciary duties," and (3) the defendant's breach "caused a loss to the Plan." Meiners v. Wells Fargo & Co. , 898 F.3d 820, 822 (8th Cir. 2018) (citation omitted). Defendants argue Plaintiffs' Complaint fails to state a claim upon which relief can be granted because it has alleged insufficient facts to support a reasonable inference satisfying each element of the cause of action. Defendants also argue Plaintiffs' claims are at least partially barred by the statute of limitations. The Court will address each element in turn.
A. Fiduciary Duty
ERISA provides that:
[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or *635 responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.
29 U.S.C. § 1002(21)(A). This definition should be broadly construed. Olson v. E.F. Hutton & Co. , 957 F.2d 622, 625 (8th Cir. 1992). "ERISA also provides fiduciary status for persons 'named' as fiduciaries in the plan instrument or 'identified' as such by an employer or employee organization." Anoka Orthopaedic Assocs., P.A. v. Lechner , 910 F.2d 514, 517 n.5 (8th Cir. 1990) (quoting 29 U.S.C. § 1102(a)(2) ). "The existence of a fiduciary relationship under ERISA ... is a mixed question of law and fact." Kramer v. Smith Barney , 80 F.3d 1080, 1083 n.2 (5th Cir. 1996). "[D]iscretion is the benchmark for fiduciary status under ERISA." Maniace v. Commerce Bank of Kan. City, N.A. , 40 F.3d 264, 267 (8th Cir. 1994)
"[F]iduciary status under § 1002(21)(A) is not an all or nothing concept .... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question. " Id. (alterations in original) (quotations omitted). Thus, "a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility." F.H. Krear & Co. v. Nineteen Named Trustees , 810 F.2d 1250, 1259 (2d Cir. 1987) ; see Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the United States , 841 F.2d 658, 662 (5th Cir. 1988) ("A person is a fiduciary only with respect to those portions of a plan over which he exercises discretionary authority or control."). This is consistent with the United States Supreme Court's statement that "[i]n every case charging breach of ERISA fiduciary duty ... the threshold question is ... whether that person was acting as a fiduciary ... when taking the action subject to complaint. " Pegram v. Herdrich , 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) (emphasis added). Plaintiffs allege Defendants acted as fiduciaries when selecting and monitoring the Principal CITs' underlying investment options. [ECF No. 1 ¶ 8].
Defendants argue they were not acting as fiduciaries when selecting and then monitoring the Principal CITs' underlying investment options. The Court agrees in part and disagrees in part.
1. Were Defendants fiduciaries in selecting the Principal CITs' underlying investments?
First, Defendants argue "it is well-settled that Defendants' establishment of the Principal CITs and the selection of 'which mutual funds to include and which share classes of those funds to select' is a 'product-design decision[ ],' not a fiduciary decision." [ECF No. 23-1 at 13] (emphasis added) (quoting Leimkuehler v. Am. United Life Ins. Co. , 713 F.3d 905, 911-12 (7th Cir. 2013) ). Plaintiffs essentially concede that Defendants are not fiduciaries to the extent Defendants selected investment options for the Principal CITs before they entered into a participation agreement with a retirement plan. See [ECF No. 28 at 15-16]. This is because before Defendants entered into a participation agreement to provide the Principal CITs to a retirement plan they had no fiduciary responsibility towards that plan. See, e.g., McCaffree Fin. Corp. v. Principal Life Ins. Co. , 811 F.3d 998, 1003 (8th Cir. 2016) ("Principal did not owe plan participants a fiduciary duty while negotiating the fee terms with McCaffree.").
However, Plaintiffs argue Defendants are fiduciaries for the selecting of the underlying investments that occurred after Defendants entered into a participation *636 agreement with a retirement plan because the participation agreements named the Defendants as fiduciaries. But the relevant participation agreements here were executed on August 2015 and December 2015, and Plaintiffs only alleged that Defendants' selection of the Principal CITs' underlying investments took place before 2015. [ECF Nos. 23-3 at 10; 23-4 at 17]. Thus, Defendants were not fiduciaries when selecting the Principal CITs' underlying investments as alleged in the Complaint because those actions all occurred before the parties executed the relevant participation agreements. Accordingly, Plaintiffs' claims that Defendants breached their fiduciary duties by selecting imprudent investments must be dismissed because Defendants were not fiduciaries during those times.
2. Were Defendants fiduciaries in monitoring the Principal CITs' underlying investments?
Defendants next argue they were not fiduciaries with respect to monitoring the Principal CITs' underlying investments because the Retirement Plans agreed to be bound by the fee rates and schedules, and therefore they had no duty to replace the underlying investments with investment vehicles that had lower fees. However, the case law cited by Defendants involve cases where the court had to decide whether the defendants were functional fiduciaries and not named fiduciaries. See McCaffree Fin. Corp. , 811 F.3d at 1002 ("Because Principal is not a named fiduciary of the plan, McCaffree needed to plead facts demonstrating that Principal acted as a fiduciary 'when taking the action subject to complaint.' " (quoting Pegram , 530 U.S. at 211, 120 S.Ct. 2143 ) ); Santomenno v. Transamerica Life Ins. Co. , 883 F.3d 833, 837 (9th Cir. 2018) ("[T]he issue is whether TLIC was a functional fiduciary ...").
Here, the Declaration of Trust and participation agreements expressly name Defendants as fiduciaries and give them the exclusive right to control the assets of the Principal CITs. The participation agreements state that "[t]he Trustee will provide services to the Target Date Funds as a fiduciary under" ERISA, and that the trustee is an "investment manager" as defined in § 1002(38). [ECF No. 23-3 at 3]. The participation agreements further state that "[t]he Trustee is providing services to the Target Date Funds as a fiduciary and has the exclusive right to manage and control the Target Date Funds." Id. at 4. This is consistent with the language of the Declaration of Trust, which states that "[a]ll the assets of the Funds shall at all times be considered as assets held by the Trustee as fiduciary." [ECF No. 1-1 at 10]. Accordingly, Defendants are fiduciaries of the plans' participants. See also Tibble v. Edison Int'l , --- U.S. ----, 135 S.Ct. 1823, 1828, 191 L.Ed.2d 795 (2015) ("Under trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones."); Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc. , 805 F.2d 732, 737 (7th Cir. 1986) ("When a contract ... grants an insurer discretionary authority, even though the contract itself is the product of an arm's length bargain, the insurer may be a fiduciary."); Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP , No. 11 Civ. 5127(HB), 2012 WL 701397, at *2 (S.D.N.Y. Mar. 6, 2012) ("Failure to remedy an investment that later becomes imprudent constitutes a breach of fiduciary duty.").
Moreover, Defendants' alleged failure to monitor the Principal CITs' underlying investments and replace them with prudent investments occurred after the parties entered into the participation agreements. This result is consistent with case law that recognizes that although a person may not be a fiduciary while negotiating with an ERISA-covered plan, it may nonetheless become a fiduciary if its agreement gives it *637 sufficient discretionary authority or control. See F.H. Krear , 810 F.2d at 1259 ("When a person who has no relationship to an ERISA plan is negotiating a contract with that plan ... [s]uch a person is not an ERISA fiduciary .... On the other hand, after a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control ... that the person thereby becomes an ERISA fiduciary ...."). Therefore, even though Defendants were not fiduciaries for their selection of investment options for the Principal CITs before they entered into the participation agreements with the Retirement Plans, they became fiduciaries after the agreements because the agreements named them as fiduciaries and because they "ha[d] the exclusive right to manage and control the Target Date Funds." [ECF No. 23-3 at 3].
The Court also finds that Plaintiffs alleged sufficient facts to show that Defendants PMC and PGI were fiduciaries as the investment advisors of the Principal CITs. PMC's and PGI's agreements with Principal Trust and PGI Trust state "that by serving as the investment manager of the Principal CITs, [they] would be acting in a fiduciary capacity as to the management of the Principal CITs' assets." [ECF No. 1 ¶ 38]. Thus, Plaintiffs have sufficiently alleged that these Defendants were appointed as co-fiduciaries as outlined in the Declaration of Trust.
B. Breach of a Fiduciary Duty
"ERISA imposes two primary duties on fiduciaries: loyalty and prudence." Meiners , 898 F.3d at 822. 29 U.S.C. § 1104(a)(1)(A) sets out the standard for the duty of loyalty. It provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of[ ] providing benefits to participants and their beneficiaries; and ... defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Courts have often said this duty requires that the fiduciary act with "an eye single" towards the interest of the beneficiaries. Pegram , 530 U.S. at 235, 120 S.Ct. 2143.
29 U.S.C. § 1104(a)(1)(B) sets forth the standard for the duty of prudence. It provides that a fiduciary must discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). This objective standard focuses on the process the fiduciary used in making its decisions, rather than the results. Braden , 588 F.3d at 595. Good faith is not a defense to a claim for the breach of either duty. DiFelice v. U.S. Airways, Inc. , 497 F.3d 410, 418 (4th Cir. 2007). The Court will analyze Plaintiffs' claims that Defendants breached their duties of loyalty and prudence together.
"Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties-duties which have been described as 'the highest known to the law.' " Braden , 588 F.3d at 598 (quoting Donovan v. Bierwirth , 680 F.2d 263, 272 n.8 (2d Cir. 1982) ). "In giving effect to this intent, [a court] must be cognizant of the practical context of ERISA litigation," and recognize that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." Id. Accordingly, "while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, [courts] must also take account of their limited access to crucial information." Id. Thus, a court should evaluate *638 an ERISA complaint as a whole and "not parse[ ] [it] piece by piece to determine whether each allegation, in isolation, is plausible." Id. at 594, 598.
Viewing the allegations as a whole and in the light most favorable to Plaintiffs, the Court finds Plaintiffs alleged sufficient facts to state a claim to relief that is plausible on its face. Here, Plaintiffs allege Defendants imprudently retained high-cost, low-performing investments despite the availability of lower-cost investments that either outperformed or performed identical to the proprietary investments chosen by Defendants. Moreover, Plaintiffs allege Defendants retained the higher-cost investments so Principal could receive the fees from those investments. For instance, Plaintiffs allege Defendants retained four Principal index funds whose fees were five to fifteen times higher than marketplace alternatives that tracked the same index. See, e.g., Moreno v. Deutsche Bank Ams. Holding Corp. , No. 15 Civ. 9936 (LGS), 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016) (concluding a complaint adequately stated a claim for relief for a breach of ERISA's duties of loyalty and prudence because the defendants failed to remove proprietary investments whose fees were excessive compared to similar investments). Plaintiffs allege sixty to seventy percent of the Principal CITs' assets were invested in the Principal index funds. In addition, Plaintiffs allege the Principal index funds performed significantly worse than their marketplace alternatives. See Krueger v. Ameriprise Fin., Inc. , No. 11-cv-02781 SRN/JSM, 2012 WL 5873825, at *11 (D. Minn. Nov. 20, 2012) (concluding that a complaint adequately stated a claim for relief for a breach of ERISA's duties of loyalty and prudence in part because "[d]efendants continued to choose novel or poorly performing affiliated fund investment options for the Plan instead of more established and better performing alternatives"). The Complaint compares each Principal index fund against two to five other index funds. Each comparison shows that the Principal index fund underperformed compared to the alternatives and had a greater tracking error. See [ECF No. 1 ¶¶ 98, 102, 106, 109]. Indeed, the Complaint alleges that "not a single target-date fund in the marketplace (other than those affiliated with Principal) used index funds managed by Principal as underlying investment options." Id. ¶ 95. This is strong circumstantial evidence the Principal index funds were imprudent investments and Principal used them in order to achieve higher fees for Principal and its affiliates.
Plaintiffs also allege Defendants retained the mutual fund version of the Principal Diversified International Fund even though Principal also offered an identical version of this investment, with no qualitative difference, that charged less than half than what the mutual fund charged. Id. ¶ 117. Plaintiffs allege that "[s]everal of the Principal CITs used the Principal International Emerging Markets mutual fund, which as of the end of 2016 charged expenses of 1.21% per year ... despite the availability of ... an identical annuity separate account that charged fees that were at least 0.50% lower than the mutual fund, and would have outperformed the mutual fund by a comparable or greater amount." Id. ¶ 120. Plaintiffs allege these decisions "resulted in Defendants and their affiliates earning higher fees." Id. In addition, Plaintiffs allege Defendants failed to invest in investment vehicles owned by other unaffiliated companies so they could subsidize Principals' mutual fund business. Id. ¶ 122; see also Gipson v. Wells Fargo & Co. , No. CIV. 08-4546 PAM/FLN, 2009 WL 702004, at *5 (D. Minn. Mar. 13, 2009) (finding a breach of a fiduciary duty claim could be supported by an allegation that a defendant used plan assets to "seed" its own funds).
*639 Plaintiffs also allege Defendants acted disloyally and imprudently in failing to obtain the best share class for the Principal CITs when investing its assets. See Krueger , 2012 WL 5873825, at *11 (concluding a complaint adequately stated a claim for relief for a breach of ERISA's duties of loyalty and prudence in part because "[d]efendants may have selected higher-cost share classes when lower-cost share classes were available because they received benefits for doing so"). For example, Plaintiffs allege Defendants retained institutional shares of the Principal high yield mutual fund, despite the availability of lower-cost shares. Moreover, Plaintiffs allege Defendants retained shares of the large cap, mid cap, and small cap index funds when lower-cost shares were available. Id. Plaintiffs claim Defendants failed to obtain the least expensive share class for eleven of the thirteen investments held by the Principal CITs. Id. ¶ 20.
In addition, Plaintiffs argue Defendants made these decisions not in the best interest of the participants but instead to benefit Principal and its affiliates. Plaintiffs allege Defendants retained underlying investments for the Principal CITs that were products of Principal so Principal could receive the fees from those investments despite Defendants' obligation to operate the Principal CITs in the sole interest of the investors. The alleged facts show Defendants almost exclusively invested the assets of the Principal CITs in investments owned by Principal. Although the plan documents allowed Defendants to invest in Principal funds, the fact that Defendants invested almost exclusively in Principal funds is circumstantial evidence the decisions were made not with an eye single towards the interest of the beneficiaries. See Urakhchin v. Allianz Asset Mgmt. of Am., L.P. , Case No. SACV 15-1614-JLS (JCGX), 2016 WL 4507117, at *1, *6-7 (C.D. Cal. Aug. 5, 2016) (noting where a plans' core investment options are managed by subsidiaries of the defendants that fact supports a claim for breach of a fiduciary duty under ERISA). This is especially true where the Complaint alleges other target date funds invest their assets in index funds managed by unaffiliated companies. See [ECF No. 1 ¶ 95].
The facts of this case are almost indistinguishable from Braden v. Wal-Mart Stores, Inc. , 588 F.3d 585 (8th Cir. 2009). In Braden , "[t]he gravamen of the complaint [was] that [defendants] failed adequately to evaluate the investment options included in the Plan." 588 F.3d at 589-90. The United States Court of Appeals for the Eighth Circuit found the complaint adequately stated a claim for relief for a breach of ERISA's duties of loyalty and prudence because the defendants were able to obtain lower-cost shares of the plans' underlying investments but failed to do so, and the defendants retained underlying investments "in the Plan despite the fact that most of them underperformed the market indices they were designed to track." Braden , 588 F.3d at 595-96 ; see also Velazquez v. Mass. Fin. Servs. Co. , 320 F.Supp.3d 252, 259 (D. Mass. 2018) ("[P]laintiff alleges not only that defendants collected excessive fees for high-cost proprietary funds, but also that they failed to shed those funds in favor of cheaper similar alternatives because to do so 'would have cost [them their] profits' .... This sufficiently states a claim for breach of fiduciary duties." (alteration in original) ). Thus, the court held it was reasonable to infer that the process the fiduciary used to make its decisions was flawed. Braden , 588 F.3d at 596. The court noted the plan contained a relatively limited number of funds, despite the availability of better investments, and the investments were chosen to benefit another, rather than the participants. Id. The court thus found that, if proven, those allegations would show the defendants' process for *640 managing the plans was "tainted by failure of effort, competence, or loyalty." Id. Plaintiffs' allegations here are almost identical to those in Braden.
Defendants argue the Court should dismiss Plaintiffs' Complaint because Plaintiffs did not allege the overall fee structure of the Principal CITs was too expensive or that the Principal CITs underperformed. Defendants argue Plaintiffs have failed to state a claim because Plaintiffs only focus on whether the fees of the underlying investments were too high and not whether the entire fee structure was too high. The Court disagrees.
The cases cited by Defendants are distinguishable. Defendants' reliance on In re AIG Advisor Group. , No. 06 CV 1625 (JG), 2007 WL 1213395 (E.D.N.Y. Apr. 25, 2007) and Castillo v. Dean Witter Discover & Co. , No. 97 CIV. 1272 (RPP), 1998 WL 342050 (S.D.N.Y. June 25, 1998) is misplaced because these cases involve federal securities claims concerning misrepresentation, not ERISA.
Defendants also cite Hecker v. Deere & Co. , 556 F.3d 575 (7th Cir. 2009). In Hecker , the plaintiffs alleged the defendants breached their fiduciary duties by (1) not informing the participants that the trustee had received money from the advisor of the mutual funds offered by the plan; and (2) imprudently limiting the investments in the plan, which caused excessive fees. 556 F.3d at 584-85. In Hecker , the court first analyzed whether the defendants breached their fiduciary duty by failing to inform the participants. Id. at 585. The court held the claim must fail because the participants were told about the total fees imposed by the various funds, and so the participants could direct their money to other lower-cost funds. Id. The court's focus on the total fees was limited to its discussion of whether the plaintiffs were adequately informed. Id. at 585-86. The court's analysis of the plaintiffs' second theory that the defendants imprudently limited the investments in the plan and therefore offered investments with excessively high fees was decided on a different basis. Id. at 586.
But in the present case, Plaintiffs have not alleged that Defendants inadequately informed them of the total fees. Instead, Plaintiffs claim is more similar to the plaintiffs' secondary theory in Hecker. However, as will be discussed below, when the Court views the facts alleged by Plaintiffs in the light most favorable to Plaintiffs, the Complaint's allegations raise an inference that the overall fees were higher.
Defendants also cite Sacerdote v. N.Y. Univ. , No. 16-cv-6284 (KBF), 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017). In Sacerdote , the court held the plaintiffs failed to state a claim for a breach of the duty of loyalty because there were no factual allegations to support the defendants' actions were intended to benefit itself or a third party. Id. at *6. The court also said that the plaintiffs' allegation regarding unnecessary and excessive fee layers was insufficient to support a prudence claim because the plaintiffs did not allege the inclusion of investments with certain administrative and investment advisory fees led to higher fees overall.[3] Id. at *11.
Here, Plaintiffs specifically alleged Defendants retained imprudent fees to benefit themselves and their affiliates. Plaintiffs alleged "Defendants consistently invested the assets of the Principal CITs in costly and underperforming index funds, vehicles, and share classes, and failed to timely remove those funds long after a reasonable investigation would have revealed the availability of lower cost, better performing options." [ECF No. 1 ¶ 21]. Plaintiffs *641 alleged that "for eleven of the thirteen investments held by the Principal CITs, Defendants failed to use the least expensive vehicle," which led to "higher fees to Defendants and their affiliates, and lower returns for participants." Viewing the allegations as a whole, the Court finds Plaintiffs sufficiently alleged that the overall fees were higher. This is especially true in this case where sixty to seventy percent of the Principal CITs funds were invested in Principal Index Funds, which had fees five to fifteen percent higher than marketplace alternatives.
Defendants also cite Meiners v. Wells Fargo & Co. , 898 F.3d 820, 823 (8th Cir. 2018). Meiners is distinguishable on the facts because Plaintiffs sufficiently alleged facts that show there were many comparable investment options in the marketplace that either were less costly and/or outperformed the underlying investments in the Principal CITs. See [ECF No. 1 ¶¶ 96-125].
Lastly, the Court has considered and rejects Defendants remaining arguments that Plaintiffs alleged insufficient facts to raise a reasonable inference that Defendants breached their fiduciary duty. Defendants' remaining arguments tend to ask the Court to weigh the facts, a task that is not permitted when considering a motion to dismiss. Nor do Plaintiffs have to rebut the lawful reasons why Defendants chose to retain the assets of the Principal CITs in their proprietary investments. See Braden , 588 F.3d at 596. Defendants also argue that the fees in this case were as a matter of law low. "But the Supreme Court has rejected presumptions of prudence in the ERISA pleading context." Terraza v. Safeway Inc. , 241 F.Supp.3d 1057, 1077 (N.D. Cal. 2017) (citing Fifth Third Bancorp v. Dudenhoeffer , 573 U.S. 409, 134 S.Ct. 2459, 2470, 189 L.Ed.2d 457 (2014) ).
Defendants also argue the Complaint fails to state a claim because they obtained an exemption from the Department of Labor ("DOL") allowing them to invest in some or all of the Principal CITs' assets in underlying Principal investments. But, the Defendants' exemption does not excuse them from their obligation to act prudently in monitoring the underlying investments of the Principal CITs. See Main v. Am. Airlines Inc. , 248 F.Supp.3d 786, 792-93 (N.D. Tex. 2017) ; Urakhchin , 2016 WL 4507117, at *7 (" '[A]n exception granted under [§ 1108] shall not relieve a fiduciary from any other applicable provision of this chapter,' including duties of prudence and loyalty imposed under § 1104." (second alteration in original) (quoting 29 U.S.C. § 1108(a) ). Defendants argue Plaintiffs' Complaint contains nothing more than bare allegations that cheaper alternative investments exist in the marketplace. Defendants argue they have no duty to scour the market to find the cheapest possible investment. See Braden , 588 F.3d at 596 n.7. However, as discussed above, the allegations in Plaintiffs' Complaint contain much more detail and specificity, and it appears from the allegations in the Complaint that Defendants failed completely to investigate cheaper alternatives, especially when some of the cheaper alternatives were different versions of Principal's own investment options. Accordingly, the Court concludes that Plaintiffs sufficiently alleged a breach of the duties of loyalty and prudence.
C. Loss Causation
Defendants next argue Plaintiffs have not alleged sufficient facts that show Defendants' breach caused a loss. Defendants argue Plaintiffs' loss was caused not by them but by the Retirement Plans' fiduciaries who entered into the participation agreements with Defendants. Defendants argue that by agreeing to the fee structure, the retirement plan fiduciaries thus caused the harm to Plaintiffs. However, *642 Defendants had a continuing duty to monitor the CITs investments and remove imprudent ones. See Tibble , 135 S.Ct. at 1828. Plaintiffs adequately alleged Defendants caused them harm by failing to obtain less costly investments, which would have resulted in higher returns for Plaintiffs. At the motion to dismiss stage, the Court is required to view the facts in the light most favorable to the Plaintiffs, having done so the Court concludes that Plaintiffs have adequately alleged causation.
D. Statute of Limitations
Lastly, Defendants argue Plaintiffs' breach of fiduciary duty claim related to Defendants' initial selection of the Principal CITs' underlying investments is barred by the statute of limitations. The Court agrees.
The relevant statute of limitations provides that:
No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation ....
29 U.S.C. § 1113(1).
This lawsuit was filed on April 16, 2018. [ECF No. 1]. Thus, any claim is barred that occurred prior to April 16, 2012. Indeed, Plaintiffs' Complaint states it is proposing a class period beginning "at any time on or after April 16, 2012." Since the initial selection of the Principal CITs' underlying investments occurred in 2009 that claim is time barred. However, as Plaintiffs point out, their claim that Defendants violated their fiduciary duties by failing to monitor and remove imprudent investments is not time barred. Tibble , 135 S.Ct. at 1829 ("A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. In such a case, so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely."). Therefore, Plaintiffs' claim that Defendants failed to monitor and remove imprudent investments is only barred to the extent Defendants may have breached that duty before April 16, 2012.
IV. CONCLUSION
For the foregoing reasons, Defendants' Motion to Dismiss, [ECF No. 23], is GRANTED in part and DENIED in part.
IT IS SO ORDERED.

The facts come from the Complaint, [ECF No. 1], and are assumed true for the purposes of the Motion to Dismiss. See Brown v. Medtronic, Inc. , 628 F.3d 451, 459 (8th Cir. 2010) (indicating that courts must accept as true the plaintiffs' factual allegations, but they need not accept as true the plaintiffs' legal conclusions). The facts also come from the Declaration of Trust and participation agreements, items embraced by the Complaint. See Meiners v. Wells Fargo & Co. , 898 F.3d 820, 822 (8th Cir. 2018) ; Gipson v. Wells Fargo & Co. , Civ. No. 08-4546 (PAM/FLN), 2009 WL 702004 (D. Minn. Mar. 13, 2009) (noting that generally a Court should not consider materials outside the pleadings, but it may consider documents "that are necessarily embraced by the pleadings").

"An index fund is a passively-managed, pooled investment product designed to mirror the performance of a particular benchmark index." [ECF No. 1 ¶ 51]. "For example, [Standard & Poor's 500 Index ("S & P 500 Index") ] funds aim to track the Standard & Poor's 500 Index, a market capitalization-weighted index of the 500 largest publicly-traded companies in the United States."Id.

Sacerdote states this legal principle without citing any authority.