# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-3310

_____

Frederick Rozo

*Plaintiff - Appellant*

v.

Principal Life Insurance Company

*Defendant - Appellee*

Principal Financial Group, Inc.

*Defendant*

_____

American Council of Life Insurers; Chamber of Commerce of the United States of America; American Benefits Council

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 18, 2019
Filed: February 3, 2020

_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Frederick Rozo invested in an Employee Retirement Income Security Act (ERISA) plan offered by Principal Life Insurance Company. The plan set a guaranteed rate of return every six months. Rozo alleges that Principal, a service provider to the plan, violated ERISA. The district court granted Principal summary judgment, finding that it is not a fiduciary when setting the rate. Having jurisdiction under 28 U.S.C. § 1291, this court reverses.

Principal offers a 401(k) retirement plan—a Principal Fixed Income Option ("plan")—which gives participants a guaranteed rate of return, the Composite Crediting Rate. Principal unilaterally calculates this CCR every six months. Before the CCR takes effect—typically a month in advance—Principal notifies plan sponsors, which alert the participants.

If a plan sponsor wants to reject the proposed CCR, it must withdraw its funds, facing two options: (1) pay a surrender charge of 5% or (2) give notice and wait 12 months. If a plan participant wishes to exit, he or she faces an "equity wash." They can immediately withdraw their funds, but not reinvest in plans like the PFIO for three months.

Rozo, a former plan participant, alleges that Principal's setting of the CCR breaches its fiduciary duty and engages in prohibited transactions under ERISA. Both counts rely on Principal being a fiduciary. Alternatively, if Principal is not a fiduciary, Rozo pleads that Principal is engaging in prohibited transactions as a party in interest.

After certifying a class action, the district court granted Principal summary judgment, concluding it is not a fiduciary nor liable as a party in interest. Rozo appeals.

-2-

This court reviews de novo a district court's grant of summary judgment viewing genuinely disputed facts "in the light most favorable to the nonmoving party." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc), *quoting* *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Torgerson*, 643 F.3d at 1042, *citing* *Ricci*, 557 U.S. at 586.

I.

Principal is a fiduciary when it sets the CCR. "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . ." **29 U.S.C. § 1002(21)(A)**; *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994) ("Clearly, discretion is the benchmark for fiduciary status under ERISA."). *See also* *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether that person was acting as a fiduciary . . . when taking the action subject to complaint.").

The parties agree that a recent Tenth Circuit decision should guide this appeal. *Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200 (10th Cir. 2019). *Teets* determines that a service provider acts as a fiduciary: if (1) it "did not merely follow a specific contractual term set in an arm's-length negotiation" and (2) it "took a unilateral action respecting plan management or assets without the plan or its participants having an opportunity to reject its decision." *Id.* at 1212. *See McCaffree Financial Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 & n.2 (8th Cir. 2016) (analyzing (1) "adherence to" contract terms "clearly identified" and (2) "contract empowered [plan sponsor] to reject" service provider's act).

This court agrees that *Teets*'s two-part test controls because it properly interprets ERISA. If the provider's actions (1) conform to specific contract terms or (2) a plan and participant can freely reject it, then the provider is not acting with "authority" or "control" respecting the "disposition of [the plan's] assets." *See* **29 U.S.C. § 1002(21)(A)**; **Black's Law Dictionary** (11th ed. 2019) (defining "authority" as "[t]he official right or permission to act, especially to act legally on another's behalf; especially, the power of one person to affect another's legal relations by acts done in accordance with the other's manifestations of assent"; defining "control" as "[t]o exercise power or influence over").

## II.

At *Teets* step one, Principal's setting of the CCR does not "conform[] to a specific term of its contract with the employer plan." *Teets*, 921 F.3d at 1212. Every six months, Principal sets the CCR with no specific contract terms controlling the rate. Principal calculates the CCR based on past rates in combination with a new rate that it unilaterally inputs.

Principal asserts that it is acting pursuant to the contract because it authorizes Principal to set the CCR. This assertion conflates two issues. Although the contract empowers Principal to set the CCR, the rate is not a "specific term[] of the contract." *Teets*, 921 F.3d at 1212. When Principal notifies a plan sponsor of the proposed CCR, the sponsor has not agreed to it. A service provider may be a fiduciary when it exercises discretionary authority, even if the contract authorizes it to take the discretionary act.

> Prior case law "stands for the proposition that if a specific term (not a grant of power to change terms) is bargained for at arm's length, adherence to that term is not a breach of fiduciary duty. No discretion is exercised when an insurer merely adheres to a specific contract term. When

-4-

a contract, however, grants an insurer discretionary authority, even though the contract itself is the product of an arm's length bargain, the insurer may be a fiduciary."

*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 737 (7th Cir. 1986). Principal cites inapposite cases that did not find fiduciary status because—unlike the setting of the CCR here—the provider's act was contractually predetermined. *See McCaffree*, 811 F.3d at 1003 (finding no fiduciary status in a case alleging excessive fees because "the contract between [the parties] *clearly identified* each separate account's management fee and authorized [defendant] to pass through additional operating expenses to participants in these accounts.") (emphasis added); *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 841 (9th Cir. 2018) *(*ruling no fiduciary capacity for "withdrawal of *predetermined* fees") (emphasis added); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (contract giving plan sponsor "the final say" on investment options).

III.

At *Teets* step two, the plan sponsors here do not "have the unimpeded ability to reject the service provider's action or terminate the relationship." *Teets*, 921 F.3d at 1212. If a plan sponsor wishes to reject the CCR, it must leave the plan, with two options: (1) pay a 5% surrender charge or (2) have its funds remain in the plan for 12 months. Charging a 5% fee on a plan's assets impedes termination. Likewise, holding a plan's funds for 12 months after it wishes to exit impedes termination.[1]

---

[1] The delay probably subjects a plan's funds to at least one new CCR, despite the plan sponsor never approving the rate change. Neither party confirms that a plan sponsor's funds are subject to a CCR change during the 12-month delay. However, the plan's contract says they are, stating, "If [Principal] delay[s] payment as permitted under this Section [regarding termination of contract], amounts to be paid or transferred will continue to earn interest at the rate determined pursuant to each Applicable Schedule as described in Article II, Section 2 until the transfer occurs." Article II, Section 2 governs the setting of the rate.

Principal, therefore, is a fiduciary exercising control and authority over the CCR. *See Chicago Bd. Options Exch., Inc. (CBOE) v. Connecticut General Life Ins. Co.*, 713 F.2d 254, 260 (7th Cir. 1983) (finding fiduciary status because a restriction requiring 10 years to withdraw funds "lock[ed]" in the plan sponsor).

Principal argues that the surrender penalty and delay are not impediments because they are in the plan contract. This argument is misplaced. Fiduciary status focuses on the act subject to complaint. *See Pegram*, 530 U.S. at 226. Here, Rozo complains about the setting of the CCR. Because plan sponsors do not have an opportunity to agree to the CCR until after it is proposed, the CCR is a new contract term. This court, therefore, must decide if plan sponsors can freely reject the term. *See Teets*, 921 F.3d at 1212. It does not matter that the barriers to rejecting the CCR are in the contract. *See, e.g., CBOE*, 713 F.2d at 256 (10% withdrawal limit in contract); *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 199 (D. Mass. 2008) (termination penalties in contract).

Relatedly, Principal asserts, without support in the record, that enforcing the surrender charge at the time of exit is no different than having the plan sponsor pay an up-front charge for free exit later. Not true. The critical inquiry here is the plan sponsor's choice at the time it receives the proposed CCR. If impeded then, Principal exercises control.

Principal also believes that *Teets*, which found no fiduciary status, controls. The investment vehicle there*,* although similar to the one here, differs in one critical respect. The *Teets* service provider had a "contractual *option* to impose a 12-month waiting period on plan withdrawal," but never exercised it. *Teets*, 921 F.3d at 1217 (emphasis added). Here, Principal imposes the 12-month delay.

Finally, Principal argues that a *participant*'s ability to freely reject the CCR—regardless of the plan sponsor's ability—negates fiduciary status for the

service provider. *Teets* summarizes ERISA case law as finding fiduciary status if either a plan sponsor *or* a participant is impeded from rejecting the service provider's act. *See* **Teets**, 921 F.3d at 1213, *citing* **CBOE**, 713 F.2d at 260 ("Fiduciary status turns on whether the service provider can force plans *or* participants to accept its choices about plan management or assets.") (emphasis added), *and citing* **Charters**, 583 F. Supp. at 199 ("And when the plan *or* the plan participants cannot reject the service provider's action or terminate the contract without interference or penalty, the service provider is a functional fiduciary.") (emphasis added). Because the sponsor here is impeded, the participant's ability to reject the CCR does not negate Principal's fiduciary status.

IV.

Because Principal is a fiduciary when it sets the CCR, this court need not address Rozo's argument alleging that Principal is conducting a prohibited transaction as a party in interest.

This court reverses and remands to the district court for proceedings consistent with this opinion.

\* \* \* \* \* \* \*

The judgment is reversed.

_____