**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-2267**

---

BENJAMIN REETZ, individually and as the representative of a class of similarly situated persons, and on behalf of the Lowes 401(k) Plan,

Plaintiff - Appellant,

v.

AON HEWITT INVESTMENT CONSULTING, INC.,

Defendants - Appellees,

LOWE'S COMPANIES, INC.; ADMINISTRATIVE COMMITTEE OF LOWE'S COMPANIES, INC.,

Defendants.

---

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Kenneth D. Bell, District Judge.  (5:18-cv-00075-KDB-DCK)

---

Argued:  December 7, 2022                    Decided:  July 17, 2023

---

Before KING and RICHARDSON, Circuit Judges, and KEENAN, Senior Circuit Judge.

---

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Keenan joined.  Judge King wrote an opinion dissenting in part.

---

**ARGUED:**  Matthew W.H. Wessler, GUPTA WESSLER PLLC, Washington, D.C, for Appellant.  Brian D. Boyle, O'MELVENY & MYERS LLP, Washington, D.C., for

Appellee.  **ON BRIEF:**  Paul J. Lukas, Kai H. Richter, Brock J. Specht, Mark E. Thomson, Patricia C. Dana, NICHOLS KASTER, PLLP, Minneapolis, Minnesota; F. Hill Allen, THARRINGTON SMITH, L.L.P., Raleigh, North Carolina, for Appellant.  Michael G. Adams, Nicholas H. Lee, PARKER, POE, ADAMS & BERNSTEIN, Charlotte, North Carolina; Jonathan D. Hacker, Shannon M. Barrett, Deanna M. Rice, Washington, D.C., Stuart M. Sarnoff, Laura Aronsson, O'MELVENY & MYERS LLP, New York, New York, for Appellee.

RICHARDSON, Circuit Judge:

On behalf of a class, Benjamin Reetz sued Aon Hewitt Investment Consulting for investment advice given to Lowe's Home Improvement to help manage its employees' retirement plan. Aon, first as an investment consultant and later as a delegated fiduciary, owed the plan fiduciary duties under the Employee Retirement Income Security Act. Reetz claims that Aon's conduct violated the core duties of loyalty and prudence.

First, the duty of loyalty. While Aon was Lowe's investment consultant, it pitched its delegated-fiduciary services. Like it sounds, such services allow a fiduciary—here, the committee that runs Lowe's plan—to outsource its duties to a third party. Reetz argues Aon's sales efforts were self-motivated and thus violated the duty of loyalty. Also, around the same time, Aon recommended that Lowe's streamline the investment menu it offered to plan participants. Reetz suggests that this advice was not solely motivated by the plan's best interest, it was shaded by the desire to land the deal, so it was disloyal.

Second, the duty of prudence. After Lowe's accepted the recommendation to streamline its investment menu and hired Aon as delegated fiduciary, Aon moved $1 billion in plan assets to a relatively untested investment fund that it created. The fund didn't do so well. So Reetz alleges the fund selection and retention breached the duty of prudence. He argues that Aon did not seriously consider alternative funds when it invested the plan assets in the fund and did not properly monitor the fund once it was chosen.

After a five-day bench trial, the district court held that Aon, in fact, did not breach its fiduciary duties. Reetz appeals, but we affirm. To start, Aon's sales efforts to obtain the delegated fiduciary work were not investment advice, so Aon owed no duty of loyalty.

The investment-menu recommendation was investment advice, but we agree with the district court that Aon's recommendation was not motivated by self-interest. And Reetz's contention that Aon's research conducted before it was Lowe's delegated fiduciary could not discharge its duty of prudence also falls short. Aon engaged a reasoned decision-making process by reviewing comparable funds. It makes no difference here that the review occurred when it established the fund (which was before Aon became Lowe's delegated fiduciary). Plus, it continued to monitor the fund. So Aon did not violate the duty of prudence. We affirm.

## I.      Background

Lowe's Home Improvement sponsors a retirement plan for its employees. The plan—one of the largest in the country—maintains around $5 billion in assets for more than 260,000 employee participants. Lowe's tasks the Administrative Committee of Lowe's Companies, Inc. with running the plan. This Committee owes fiduciary duties to the plan. But managing the plan is difficult for the Committee because it primarily consists of non-investment professionals. In comes Aon.

Aon provides investment consulting and advice. Lowe's, through the Committee, hired Aon in 2008 as an investment consultant. In that role, Aon owed the plan fiduciary duties and advised the Committee—which retained ultimate decision-making authority—on plan management. With Aon's help, the Committee crafted a menu of options from

4

which plan participants could "construct their own investment portfolios" personalized to their needs and risk tolerances.[1]  J.A. 1851.

During Aon's tenure as investment consultant, it was separately trying to get a foothold in the delegated-fiduciary market.[2]  Delegated-fiduciary services allow plan administrators—like the Committee—to take a backseat role in plan management.  While a plan administrator solicits advice from investment consultants, with a delegated fiduciary, the administrator outsources primary responsibility for plan management.

And Aon had a strategy to push its new services:  pitch preexisting consulting clients.  This strategy—selling a new service to a client who uses your other services—is called "cross-selling."  Lowe's, as a preexisting consulting client with a massive plan, was in Aon's crosshairs.

To complete a "cross-sell," Aon would enlist the investment consultants assigned to that client.[3]  After all, the consultants already knew the client and had relationships with

---

[1] ERISA covers two types of retirement plans:  defined-contribution and defined-benefit plans.  Lowe's plan is a defined-contribution plan.  With this type of plan, an employee contributes—and decides how to invest—a portion of his paycheck to retirement savings.  The employee ultimately receives the returns of his investments as retirement income.  In contrast, under a defined-benefits plan, the employer guarantees a specific amount of income to the employee in retirement.  Both types of plans have upsides and downsides.  One downside of the defined-contribution plan is that employees—through insufficient contributions or poorly managed investments—may not achieve adequate retirement income.

[2] Aon had previously offered delegated-fiduciary services for clients with defined-benefits plans, but it wanted to expand their services to clients with defined-contribution plans.

[3] In fact, Aon's consultants were assigned "revenue goals" tied to selling delegated-fiduciary services.  J.A. 1874.  And they received bonuses for "increasing revenue/cross-selling."  J.A. 1874.

5

the right players. Aon's consultants for Lowe's during the relevant time were first Brian Abshire and Rob Van Den Brink. Then when Van Den Brink left, he was replaced by Jacob Punnoose, an aggressive cross-seller. Using its consultants, one strategy Aon might use to introduce clients to delegated-fiduciary services was to start discussing plan structure. With that in mind, we turn to Aon's recommendations to Lowe's.

Around the end of 2012, Aon and the Committee became concerned with the investment menu offered to participants. It was too complicated.[4] So the Committee asked Aon to present alternative plan structures. Aon obliged at a June 2013 meeting, where it recommended streamlining the menu with more intuitively named options. But the Committee didn't jump at the recommendation; instead, they requested a "ground up" review to identify "the ideal plan." J.A. 1865.

Aon reported its findings from the "ground up" review at a November 2013 meeting. Through Abshire and Punnoose—who had replaced Van Den Brink between the June and November 2013 meetings—Aon outlined three possible structures: Traditional, Alternative, and Emerging. The Traditional structure was effectively the status quo for Lowe's. The Emerging structure proposed drastic streamlining, whittling the menu down to a few investment options. And those options had objective-based names that were easy to grasp (*e.g.*, the Growth option and the Inflation Protection option). The Alternative

---

[4] There were several overlapping concerns. The twelve options offered were too numerous and created a paradox of choice. The options were not intuitively named. And of the twelve options, eight were equity funds, which—the concern went—resulted in an over-allocation to equity markets.

6

structure was something of a middle-ground. It narrowed the plan menu but not to the same degree as the Emerging structure. Aon's official recommendation at that time was the Alternative structure.

But the Committee was still not ready to decide. So Aon again presented on plan structure at a December 2013 meeting. Shortly before the meeting though, a significant event occurred: Punnoose mentioned Aon's delegated-fiduciary services to Lowe's for the first time. He had been speaking with Aon's sales executives on how to pitch Lowe's. And he wanted to give a presentation on the services at the December meeting, but it was scrapped when Aon's compliance compartment failed to approve it. Still, Punnoose mentioned the service in a pre-meeting email to Committee members. He sent information about Aon's delegated-fiduciary services and said it "dovetails nicely" with Aon's recommended changes to the plan structure. J.A. 1877. Lowe's essentially rebuffed the overture.

During the December 2013 meeting, Aon again recommended the Alternative structure. And the Committee seemed to agree. So going away from the meeting, Aon planned to next present on implementing the Alternative structure. But before it had the chance, there were delays: a cancelled March 2014 meeting and a June 2014 meeting that took up other matters. By the time the Committee was ready to turn back to plan structure, they needed another high-level discussion. So an October 2014 meeting was scheduled for that purpose.

Before the October 2014 meeting, Aon againt raised its delegated-fiduciary services. It requested that the Committee allow Aon's sales team to accompany and pitch

7

the delegated-fiduciary services. The Committee agreed. So Aon's sales team, with Abshire and Punnoose's help, prepared a pitch. At the meeting, the consultants and sales team presented separately. During the first half, Abshire and Punnoose presented Aon's proposed plan structure. Then the sales team pitched Aon's delegated-fiduciary services. At no time—during the October 2014 meeting or otherwise—did Aon recommend that Lowe's engage a delegated fiduciary, much less recommend Aon's services. That said, there was no clear delineation between the discussions of the alternative structure and the delegated-fiduciary services at the meeting. There was a single PowerPoint presentation. And the sale's pitch started with a slide that bridged the topics: "Implementation & Fiduciary Considerations." J.A. 4221.

At the end of the October 2014 meeting, the new plan structure went to a vote. Despite earlier interest in the Alternative structure, the Committee ultimately decided (with several new members) that the Emerging structure would be "easier to communicate to participants." J.A. 6206. So the Committee formally adopted the Emerging plan structure. Although the Committee understood that delegated-fiduciary services was a distinct matter from plan structure (i.e., the Emerging structure could be implemented with or without a delegated fiduciary), they also went ahead and voted to engage a delegated fiduciary. But—at least to Aon's belief[5]—the Committee had not yet selected a delegated fiduciary. So Aon's sales pitch continued. Aon held an informal December 2014 meeting with

---

[5] There was a mixed record as to whether the Committee also selected Aon as the delegated fiduciary at the October 2014 meeting. But even if they did, the record is clear that Aon did not think it had been selected yet and continued its sales efforts.

8

several Committee members to "provid[e] additional information about Aon's delegated services and fees." J.A. 1887. Later that month, Aon officially got the nod. This was a huge win for Aon. Not only would it increase its annual fees from Lowe's by nearly half-a-million dollars, but it also put them on the map in the competitive delegated-fiduciary market.

So Aon closed the deal. Reetz claims this was a conflict of interest. But that's not all. Reetz also challenges Aon's conduct after becoming delegated fiduciary. Reetz is dissatisfied with one fund Aon chose for class assets. To understand the allegation, we need to take a step back. When Aon moved into the delegated-fiduciary market, it created a Collective Trust. The trust was a vehicle for Aon to create investment funds catered to delegated-fiduciary clients. This included three multi-asset-class objective-based funds: the Growth Fund, Income Fund, and Inflation Strategy Fund. Using more than one asset class—equities and bonds, for example—these funds sought to achieve a given objective: growth, income, or inflation protection.

Aon's role in running each fund was a manager-of-managers role. That is, the fund invested in other funds—sometimes called a fund of funds. Aon dictated asset allocations in the fund. And it chose various asset managers (all of whom were unaffiliated with Aon). But Aon themselves did not pick the assets to invest in, the asset managers did. Aon's management of the asset managers was done through its Delegated Portfolio Oversight Committee.

The Growth Fund—the only fund at issue—was essentially the trust's equity fund. In developing the fund, Aon reviewed alternative "growth" funds on the market. But it

9

found that none aligned with its vision.  It wanted an equity fund that "would produce returns similar to global equity over the long run, but with less volatility and more protection against losses in down markets."  J.A. 1902.  Simply put, the fund wouldn't crush it in a hot market but would have greater downside protection.  Aon struck this balance by including non-equity assets in the fund to protect against equity overexposure.

When Aon became the Committee's delegated fiduciary, "it was up to Aon to pick" which investment fund to use for the three objective-based options[6] in the Emerging plan menu.  J.A. 1888.  It didn't take Aon long to make its selections.  It chose the Growth Fund from its collective Trust as the Emerging structure's Growth option.  In fact—given that Aon was tracking the Growth Fund's performance, and it was already familiar with other options from its market review during the creation of the Growth Fund—it did not compare the Growth Fund to comparable funds at the time of selection.  Once the fund was chosen, all plan assets previously invested in the plan's eight equity options were transferred to the Growth Fund (unless the participant directed otherwise).  But this all came as no surprise to Lowe's; it had "effectively assumed that Aon would likely use its own funds from the time that Aon was selected as the delegated fiduciary."  J.A. 1891.

While unsurprising, the fund might be described as an unconventional choice.  It didn't have much of a record.  And the record it did have was underwhelming.  At the time

---

[6] The three objective-based options in the Emerging structure investment menu mirrored the investment funds in the trust.  There was the Income option, Growth option, and Inflation Protection option.  Only Aon's selection for the Growth option is at issue. But it may not come as a surprise that Aon also paired the Income option with the Income Fund and the Inflation Protection option with the Inflation Protection Fund.

10

of selection, the Growth Fund: "(i) had only two years of performance history, (ii) was in the bottom 10% of its peers over all periods, (iii) was included in only two other retirement plans in the country, and (iv) was not included in any similarly-sized retirement plans." J.A. 1908. Further, relative to the otherwise comparable funds, the Growth Fund had few assets under management—the $1 billion from Lowe's was nearly three-quarters of the fund's assets.

Returns for investments in equities were "substantially higher" than projected during the relevant period. J.A. 1906. Unfortunately for the fund participants, the Growth Fund's asset allocation meant that it didn't fully capitalize on these strong markets. But as designed, the Growth Fund showed less volatility. And as markets shifted in early 2021, the Growth Fund "performed very well." J.A. 1920. Still, there is no avoiding the bottom line: the fund's performance "lagged the returns of comparable growth funds and benchmarks." J.A. 1912. And with so much money invested, even a small difference in rate of returns results in eye-popping differences in returns. By some calculations, if plan assets had been invested in other funds, the class would have between $70 and $277 million more saved for retirement. So plan participants were not happy.

Alleging that Lowe's, the Committee, and Aon breached their fiduciary duties, Reetz—a former Lowe's employee and participant in the plan—filed this class action. A class was certified of all plan participants "whose Plan account balances were invested in the Aon Growth Fund at any time on or after October 1, 2015." J.A. 1846 (cleaned up). After the district court denied the parties' cross-motions for summary judgment, Lowe's and its Committee settled with the class. But Aon elected to go to trial. The district court

11

held a five-day bench trial.  Then, with a cogent and comprehensive 120-page order, it found for Aon and entered final judgment.

## II.    Discussion

Aon owed fiduciary duties to the plan under ERISA, including the duties of loyalty and prudence.  *See* 29 U.S.C. § 1104(a).  The duty of loyalty requires that a fiduciary "discharge his duties … solely in the interest of the participants."  § 1104(a)(1)(A).  The duty of prudence requires the fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use."  § 1104(a)(1)(B).  The district court correctly held that Aon adequately discharged both duties.

### A.    Loyalty

Reetz argues that Aon violated the duty of loyalty in two ways.  First, by cross-selling its delegated-fiduciary services.  But under ERISA, § 1104's duties only attach "to the extent" a fiduciary is acting in his capacity as fiduciary.  *See* 29 U.S.C. § 1002(21)(A).  Here, that means giving investment advice.  Selling services is not investment advice.  So Aon didn't fail to discharge a duty; it owed no duty to begin with.  Second, he alleges Aon violated the duty of loyalty by advising Lowe's to change plan structure.  This was investment advice, so Aon owed the duty of loyalty.  Reetz argues that the menu advice was shaded by Aon's desire to sell its services.  So—since the duty of loyalty is absolute— he contends the advice violated the duty.  The problem for Reetz is the bench-trial record shows Aon's advice was solely motivated by benefitting plan participants.

#### a.  Cross-selling

12

Fiduciary status under ERISA "is not an all-or-nothing concept." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 192 (4th Cir. 2002) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1162 (4th Cir. 1996)).  A person may be a fiduciary for some purposes but not others.  *See Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000); *see also DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007).  True, "ERISA does require . . . that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram*, 530 U.S. at 225.  But the threshold question remains whether the fiduciary "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.*; *see Peters v. Aetna Inc.*, 2 F.4th 199, 230 (4th Cir. 2021).  And "we apply a functional analysis in determining if a party acts as a fiduciary . . . with regard to particular conduct." *DiFelce*, 497 F.3d at 418 (citing *Pegram*, 530 U.S. at 226).

Determining whether a person was performing a fiduciary function starts with ERISA's text.  Section 1002 says a person only acts as a fiduciary "to the extent" it engages in certain conduct.  § 1002(21)(A).  This conduct includes "render[ing] investment advice for a fee or other compensation." *Id.*[7]  Regulations implementing ERISA provide more color, equating "rendering investment advice" with "advice to the plan as to the value of

---

[7] It also includes conduct "to the extent" the fiduciary "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan." § 1102(21)(A).  Reetz does not argue, and there is no reason to think, that Aon's sales efforts constitute this type of conduct.

securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property." 29 C.F.R. § 2510.3-21(c)(1)(i). Reetz argues that by pitching delegated-fiduciary services to Lowe's, Aon was giving "investment advice"—because deciding whether to use the service fits under the umbrella of investment strategy. Therefore, he argues, Aon was wearing its fiduciary hat when pitching its delegated-fiduciary services and owed the duty of loyalty.

Reetz's position can't stand. Start with the idea that selling (but not yet *cross*-selling) services is not investment advice. For this point, there's plenty of out-of-circuit case law. *See, e.g.*, *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 837–38 (9th Cir. 2018) ("[A] plan administrator is not an ERISA fiduciary when negotiating its compensation with a prospective customer . . . [because it is] not rendering investment advice."); *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1002–03 (8th Cir. 2016); *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009). And it makes perfect sense. When trying to sell services, a hopeful fiduciary does not render investment advice. *See Santomenno*, 883 F.3d at 838.

Is there good reason not to extend the same analysis to *cross*-selling? No. Just like on an initial sale or negotiation, when a cross-seller pitches his other services, he is performing an "arms-length negotiation" that doesn't constitute a fiduciary function. *McCaffree*, 811 F.3d at 1002. The only aspect of the relationship that has changed is the cross-seller does owe fiduciary duties in other capacities, while with the initial sale, *no* fiduciary duties have attached yet. *See Renfro*, 671 F.3d at 324 (reasoning that when selling

14

the initial services, an entity "owes no fiduciary duty" because it is "not yet a plan fiduciary at the time"). You might think that makes a difference. Maybe the cross-seller's fiduciary duties bleed through to the new sales effort. But that would flout the Supreme Court's clear mandate that the "central inquiry is whether the party was acting as an ERISA fiduciary 'when taking the action subject to complaint.'" *Santomenno*, 883 F.3d at 838 (9th Cir. 2018) (quoting *Pegram*, 530 U.S. at 226).

Aon's sales efforts were not investment advice. Accordingly, it was not acting as a fiduciary so owed no fiduciary duties.

### b. Plan structure

When Aon advised Lowe's about the investment menu offered to plan participants, it was acting as a fiduciary. So it was required to act loyally. The duty of loyalty stems from § 1104's charge that a fiduciary act "solely" in the plan's interest. § 1104(a)(1)(A). The duty is "absolute," *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 154 (4th Cir. 1996), meaning the fiduciary "must exclude all selfish interest," *Pegram*, 530 U.S. at 224 (quoting G. Bogert & G. Bogert, Law of Trusts and Trustees § 543 (rev.2d ed. 1980)). There can be "no balancing of interests," *Bedrick*, 93 F.3d at 154.

The duty, however, does not mean a fiduciary is disqualified whenever it has a conflict of interest. *See, e.g.*, *DiFelice*, 497 F.3d at 421. Nor does it necessarily mean that a fiduciary acts disloyally where the proposed action aligns with its own interest. *See Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982). But it does mean that a fiduciary must act *as if* it is free of any conflict. *Bedrick*, 93 F.3d at 154. In short, a fiduciary can have self-interest, it just can't act on it.

15

Reetz says Aon, as the fiduciary, gave its advice to streamline the investment menu to advance its own interest in selling delegated-fiduciary services. If true, Aon violated its duty of loyalty. *See DiFelice*, 497 F.3d at 418–19 ("Fiduciaries must . . . make any decisions in a fiduciary capacity with 'an eye single to the interests of the participants and beneficiaries.'" (quoting *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995))). Being motivated by self-interest first requires the existence of self-interest. Reetz says Aon was interested in streamlining the investment menu because it increased the chances of Lowe's hiring a delegated fiduciary, which increased the chances of Lowe's hiring Aon as delegated fiduciary, which would increase Aon's fees from Lowe's. Some record evidence supports this theory, and Aon does not dispute that a changeup in the investment menu played to its interest.[8]

So Aon had an interest in Lowe's adopting a streamlined menu. But the problem for Reetz is he must also show that Aon acted on that interest—that is, it failed to act as if it were free of any conflict. *See Bedrick*, 93 F.3d at 154. And, to the contrary, the district court found—in a factual finding to which we give deference—that Aon did not act disloyally. Reetz reads the district court's order differently. He says the district court held that Aon's employee Punnoose acted disloyally by "allow[ing] his sales efforts to color his restructuring recommendations." Appellant's Br. at 34–35 (quoting J.A. 1938). He argues

---

[8] You might think that streamlining the menu would cut the other way. A simplified investment menu would reduce the burden of administering the plan, thereby decreasing the appeal of delegated-fiduciary services. That said, Aon's Head of Delegated Product and Business Development testified that "one way" consultants could introduce delegated-fiduciary services to clients was through a discussion on plan structure. J.A. 140. And Aon doesn't deny that streamlining the investment menu was to its advantage.

the district court then went astray by weighing his disloyal conduct against Abshire's loyal conduct. But this mischaracterizes the district court's order. The district court did not weigh the loyal and disloyal conduct; it weighed the evidence to find Aon, as the fiduciary, was not motivated by self-interest. Not only is that permissible, it's demanded.

A quick review of that other evidence helps explain the district court's finding. The foundational June 2013 presentation where Aon recommended structural change was requested by Lowe's given certain challenges the plan was facing. There was no evidence that Aon had "any thought of starting a sales effort in developing the June 2013 presentation." J.A. 1936. Even when Aon's sales efforts were in full stride by the October 2014 presentation, their investment advice remained evenhanded. The written recommendations at that meeting were consistent with Aon's longstanding recommendation: adopt the Alternative structure, "which was less likely to lead to the engagement of a delegated fiduciary." J.A. 1936. And while the Committee's meeting minutes recorded an "ultimate recommendation" of the Emerging structure, Aon "present[ed] a balanced view between the Alternative and Emerging structures." J.A. 1873. In fact, when the Committee started tilting towards the Emerging structure during the meeting—in part because they thought it would be "easier to communicate to participants," J.A. 6206—Aon suggested adding a tier of passively managed funds which likely would have reduced any fee they were entitled to as a delegated fiduciary. So Aon acted as if it were free of any conflict.

In considering this evidence after the bench trial, the district court articulated the correct legal standard—and we will not lightly assume it disregarded it. *See* J.A. 1929

17

("There is no balancing of interests; ERISA commands undivided loyalty to the plan participants." (quoting *Bedrick*, 93 F.3d at 154)). Aon's recommendation to streamline the investment menu may have incidentally benefitted its own interest. But, because that interest did not motivate Aon's recommendation, it did not violate the duty of loyalty.

## B.    Prudence

The duty of prudence is shorthand for a fiduciary's responsibility to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 1104(a)(1)(B). As § 1104 makes clear, the content of the duty is defined based on the "circumstances then prevailing." *Id.* This means it is a context-specific duty. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *see also Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 360 (4th Cir. 2014) (referring to the analysis as a "totality-of-the-circumstances inquiry"). Discharging the duty in the context of investment decisions typically requires "investigat[ing], research[ing], and review[ing] the options." *Plasterers' Loc. Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 216 n.8 (4th Cir. 2011). But the duty of prudence is not results oriented; it looks for a reasoned process. *See DiFelice*, 497 F.3d at 420 ("[A] court must ask whether the fiduciary engaged in a reasoned decisionmaking process"). Prudence does not mean clairvoyance. The duty does not demand a fiduciary—with the benefit of hindsight—make the optimal investment. *See id.* at 424. Instead, a fiduciary "who appropriately investigate[s] the merits of an investment decision prior to acting [ ] easily clear[s] this bar." *Tatum*, 761 F.3d at 358.

18

Reetz challenges Aon's selection and retention of the Growth Fund as the investment vehicle for the Growth option in Lowe's retirement plan. Such a challenge is two-fold: there is the "duty to exercise prudence in selecting investments" and the "continuing duty to monitor [those] . . . investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). Upon review, we agree with the district court that Aon acted prudently.

Start with the selection of the Growth Fund. Aon created the Growth Fund after an extensive review of the available options on the market left them dissatisfied. So by the time Aon was selected as delegated fiduciary, it had already decided where the plan's Growth-option assets were headed: the Growth Fund. This means that—once chosen as delegated fiduciary—Aon did not "consider[ ] any funds other than the Aon Growth Fund for the 'Growth' equity option in the Lowe's Plan." J.A. 1893. According to Reetz, that's the end of the analysis—it makes no difference whether Aon engaged a full consideration of comparable funds before becoming delegated fiduciary. But Reetz's position ignores the context specific aspect of the duty of prudence.[9] *See Fifth Third Bancorp*, 573 U.S. at 425. A simple example makes the point. Imagine that one week before becoming a fiduciary, an investment advisor does an exhaustive review of options in the market. Would anyone contend the advisor—a week later when he becomes a fiduciary—must re-review the market? No, otherwise our instruction that when reviewing a decision for prudence, there can be no "uniform checklist" and "a variety of actions can support a

---

[9] Keeping this rule in mind, we've rejected similar attempts to impose per se rules on the duty-of-prudence analysis in other ERISA cases. *See Tatum*, 761 F.3d at 360.

19

finding" of prudence depending on the circumstances, would be meaningless. *Tatum*, 761 F.3d at 358. So the question becomes whether Aon—based on the "circumstances then prevailing"—adequately investigated other investment options. *See* § 1104(a)(1)(B)

On that question, the record is clear. When Aon created the Growth Fund, it considered "other potential investment funds and strategies." J.A. 1893. In fact, it considered the very funds that Reetz now points to. So Aon "investigat[ed], research[ed], and review[ed] the options." *See Pepper*, 663 F.3d at 216 n.8. But it just didn't like what it saw. The available funds did not allocate assets in a way "consistent with Aon's thinking." J.A. 1893. In other words, Aon thought it could do better. So in a sense, Aon went beyond the duty. It didn't merely investigate, it created.[10] It tweaked the available options to chart its own path based on its market research. And while Aon created the Growth Fund in 2013, it had been "closely tracking the Growth Fund's performance since its inception and understood how it compared against benchmark and peer funds" when it selected the Fund for Lowes. J.A. 1898. Maybe—in hindsight—Aon was wrong that it could do better (or maybe it was right and hit the market at the wrong time). Again, though, prudence looks for process, not results. The process here was reasoned and calculated to maximize the benefits of the plan, so Aon cleared the prudence bar.

---

[10] In this respect, Aon's decision is little different from a fiduciary's decision to create a custom "white label" fund. Such funds "are commonly used by large plans . . . to build a plan-specific, diversified portfolio at a reasonable fee, using multiple investment managers." J.A. 1894. The Collective Trust, of which the Growth Fund was a part, was essentially a collection of white-label funds available to Aon's delegated-fiduciary clients at lower cost due to pooling of assets across plans.

Now to the retention of the Growth Fund. The duty of prudence doesn't end when an investment is chosen. To the contrary, when "determining the contours of an ERISA fiduciary's duty," we look to the common law of trusts. *See Tibble*, 575 U.S. at 528–29. There, we find "a continuing duty to monitor trust investments and remove imprudent ones." *Id.* at 529; *see id.* at 529–30. Although the Supreme Court has left open the "scope" of that duty,[11] we know that ERISA fiduciaries have "a continuing duty of *some kind*." *Id.* at 530 (emphasis added). No matter the "scope" under ERISA, Aon cleared it. While Reetz argues that Aon dumped assets in the Growth Fund and never looked back, the record shows otherwise.

Aon staffed a committee to monitor its funds, including the Growth Fund: the Delegated Portfolio Oversight Committee. Through its Oversight Committee, Aon reviewed the underlying managers' work (recall that Aon did not themselves pick investments; it was a manager of managers). When Aon saw something it didn't like, it

---

[11] The Court cited several treatises on trusts in feeling out possible formulations of the duty but did not pick one. *See Tibble*, 575 U.S. at 529–30 ("[T]he trustee cannot assume that if investments are legal and proper for retention at the beginning of the trust, or when purchased, they will remain so indefinitely." (quoting A. Hess, G. Bogert, & G. Bogert, Law of Trusts and Trustees § 684, pp. 145–146 (3d ed. 2009))); *id.* at 530 ("A trustee's duties apply not only in making investments but also in monitoring and reviewing investments, which is to be done in a manner that is reasonable and appropriate to the particular investments, courses of action, and strategies involved." (quoting The Restatement (Third) of Trusts § 90, Comment b, p. 295 (2007))); *id.* at 529 ("[C]ontinuing responsibility for oversight of the suitability of the investments already made." (quoting The Uniform Prudent Investor Act § 2, Comment, 7B U.L.A. 21 (1995))); *id.* at 529–30 ("[W]hen the trust estate includes assets that are inappropriate as trust investments, the trustee is ordinarily under a duty to dispose of them within a reasonable time." (quoting 4 A. Scott, W. Fratcher, & M. Ascher, Scott and Ascher on Trusts § 19.3.1, p. 1439 (5th ed. 2007))).

21

changed it. It periodically altered asset allocation and swapped out the underlying managers. For example, Aon made strategic shifts to the Growth Fund. In 2018, it "slight[ly] increase[d] . . . the Growth Fund's equity exposure." J.A. 1919. Then, in 2020, it changed the types of non-equity assets used to avoid equity overexposure. And Aon didn't just track the performance of the underlying managers, it tracked the overall performance of the Growth Fund. In fact, it "closely monitored" the fund, J.A. 1956, by "review[ing] extensive quantitative and qualitative information about the Growth Fund's performance," J.A. 1909. As part of this monitoring, Aon compared the Growth Fund to its benchmarks and peer funds.

True, Aon never asked whether it should abandon the Growth Fund for another fund in so many words. But in this context, it wasn't required to. As the district court found, "Aon over time exercised its expertise to keep apprised of alternate investments in the market" and compared the Growth Fund to those alternatives. J.A. 1956. And, through its manager-of-managers role, it could—and did—make underlying tweaks to the Growth Fund without jumping ship entirely. Together, these actions discharged Aon's "continuing duty to monitor . . . investments and remove imprudent ones." *Tibble*, 575 U.S. at 529.

\*          \*          \*

While Aon was recommending that Lowe's restructure its retirement plan, it was also pitching Aon's delegated-fiduciary services. Reetz says the investment advice was intended to spur Lowe's into hiring a delegated fiduciary, so Aon violated its duty of loyalty. That's not so. Selling services is not investment advice. And the actual investment advice—streamlining the plan menu—was not informed by Aon's desire to sell its services.

22

So Aon did not violate the duty of loyalty. After becoming Lowe's delegated fiduciary, Aon moved plan assets to its proprietary investment fund. Reetz challenges that decision as breaching the duty of prudence. But Aon considered alternative investment funds when creating its fund. And it continued to monitor the fund's performance. That satisfied Aon's duty to engage a "reasoned decision-making process." So Aon did not breach the duty of prudence either. Accordingly, the district court is

*AFFIRMED.*

23

KING, Circuit Judge, dissenting in part:

Because defendant Aon Hewitt Investment Consulting, Inc. ("Aon") breached the duty of loyalty it owed to the plaintiffs under the Employee Retirement Income Security Act of 1974 ("ERISA"), I dissent from the majority's ruling on that issue. As explained below, I would reverse the judgment on the duty of loyalty issue and remand for further appropriate proceedings, including calculation of damages.[12]

I.

It is axiomatic that "[t]he fiduciary of an ERISA plan must act '*solely* in the interest of the participants and beneficiaries and for the *exclusive purpose* of providing benefits . . . and defraying reasonable expenses.'" *See Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 154 (4th Cir. 1996) (quoting 29 U.S.C. § 1104(a)(1)(A)) (emphasis added). Indeed, the "duty of loyalty" has been recognized by our Court as "a most difficult task" to fulfill. *Id.* In the words of our venerable fallen colleague Judge K.K. Hall,

> [e]ven the most careful and sensitive fiduciary . . . may unconsciously favor its profit interest over the interests of the plan, leaving beneficiaries less protected than when the trustee acts without self-interest and solely for the benefit of the plan.

*Id.* (internal quotation marks omitted). To that end, "[t]here is *no balancing of interests*; ERISA commands *undivided loyalty* to the plan participants." *Id.* (emphasis added). More

---

[12] I agree with the majority's ruling that Aon did not breach ERISA's duty of prudence. *See, e.g., Tussey v. ABB, Inc.*, 850 F.3d 951, 958 (8th Cir.), *cert. denied*, 138 S. Ct. 281 (2017) (recognizing that "[a] fiduciary can . . . breach its [duty of loyalty] by acting on improper motives" but can nevertheless render prudent fiduciary investment advice). Accordingly, my disagreement is limited to the duty of loyalty issue.

24

specifically, "[f]iduciaries *must . . .* make *any* decisions in a fiduciary capacity with an *eye single* to the interests of the [plan] participants." *See DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007) (internal quotation marks omitted) (emphasis added).

## II.

Contrary to my friends in the majority, I am satisfied that Aon — which was indisputably an ERISA fiduciary rendering "investment advice" to the Lowe's 401(k) retirement plan — did not "make [all] decisions . . . with an *eye single* to the interests of the . . . [plan] participants." *See DiFelice*, 497 F.3d at 418 (emphasis added); *Bedrick*, 93 F.3d at 154. That is, Aon "failed to act as if it were free of any conflict." *See ante* at 16. Perhaps that point is best illustrated by the district court's findings of fact, which tellingly reveal the extent of Aon's self-serving and disloyal conduct. *See, e.g.*, J.A. 1872 (court finding that Aon senior fiduciary consultant Punnoose did not act with "singular focus" toward Lowe's 401(k) retirement plan but was "focused on . . . selling additional services and obtaining increased fees"); *id.* (court finding that Punnoose was "focus[ed] on encouraging, arranging and participating" in cross-selling delegated services "to burnish his candidacy to become a Partner at Aon"); *id.* at 1938 (court finding that Punnoose "allowed his sales efforts to color his restructuring recommendations" for Lowe's 401(k) retirement plan, and that fiduciary investment advice discussions were utilized by Aon "as a springboard for the benefit of [its] . . . delegated services sales effort").[13]

---

[13] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

III.

In these circumstances, it is readily apparent that the fiduciary investment advice Aon provided to the Lowe's 401(k) retirement plan was made "at least in part to enhance [Aon's] position." *See Leigh v. Engle*, 727 F.2d 113, 129 (7th Cir. 1984). Pursuant to our Court's longstanding precedent, that alone constitutes a breach of ERISA's exacting duty of loyalty. *See, e.g.*, *Bedrick*, 93 F.3d at 154; *DiFelice*, 497 F.3d at 418.

I respectfully dissent in relevant part and would reverse.